UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

UNITED STATES OF AMERICA

v.                                             Criminal Case No. 18-160JJM

RANDALL LEVESQUE

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Randall Levesque ("Levesque") is due to be sentenced on March 11, 2019, on one charge of wire fraud, in violation of 18 U.S.C. § 1343.  The Guideline range, as determined by the Probation Department, is 41-51 months of imprisonment.  For the reasons discussed below, the United States believes that a sentence of 41 months of imprisonment is warranted to reflect the seriousness of the offense, to provide just punishment and to afford adequate deterrence.

I.    Overview of Offense Conduct

From 1988 to January 2017, Levesque owned and operated Insurance Services, an insurance agency in Middletown, RI.  Levesque was a licensed insurance agent specializing in equine insurance.  He offered major medical and mortality insurance policies for horses.  By all accounts, Levesque was relatively well known in the tight-knit world of equestrians.  His business thrived.

Beginning in late 2015, however, Levesque began to steal premiums from the insurance companies for which he was an agent and steal financing from premium financing companies.  He also used insureds' identities without their knowledge or permission.  On occasion, Levesque billed insureds' credit cards without permission or

overbilled their credit cards.  To further facilitate his fraud, Levesque created fictitious companies and phony insurance policies.

Levesque continued his fraudulent activity for over a year spending the proceeds on his lifestyle.  When he was audited in January 2017 by John Dougherty and Beth Laird ("Laird"), two representatives of Great American Insurance Company ("GAIC"), Levesque admitted that his lifestyle had gotten out of control.  He told them, "At this point, I just want to stay out of jail."

After GAIC discovered the fraud and terminated its relationship with Levesque, Laird, the underwriter for GAIC's Equine Division, continued to follow Levesque's activities on social media.  As she stated in her letter to the Court, "it has been disturbing to watch Mr. Levesque post on social media  . . . as he continued to live a lavish lifestyle by 'checking into' high-end restaurants, attending horse shows, and flying around the country – all while showing no remorse."

Shortly after the fraud was discovered, in February 2017 GAIC referred Levesque to the Rhode Island Department of Business Regulation ultimately leading to Levesque surrendering his agent license.  Despite having surrendered his license, and after the criminal investigation began, Levesque again started to sell equine insurance.  In the summer of 2018, former customers of Levesque's began to report that Levesque had contacted them about purchasing insurance.

The search of Levesque's cell phone revealed text messages such as the following demonstrating his continued efforts to sell insurance without a license even as the criminal investigation progressed:

4/12/18 – "Hey.  Really wanted to visit for coffee I've gotten tons of good news to share and you listened to all the bad stuff.  I'm home late today for a couple of days.  Great American had to give me back a ton of money.  My lawyer is talking probation and I got approved for a truck.  Life is precariously good please try to make some time."

7/31/18 – "Just so you know.  I'm as of today once again a licensed equine insurance producer and back in business."

When asked, "how," Levesque responded, "No charges were ever filed it was considered civil.  My no compete term ended and my FL license never expired.  I saw an old friend from Great American.  And AON they appointed me yesterday.  I'm pretty happy about it."

When asked if Great American would work with him, Levesque said, "Yes but thru the broker for the first year."

7/31/18 – "I'm as of one hour ago a licensed equine insurance producer for AON brokerage.  I'm licensed in FL and back in businesses."

7/31/18 – "Hi can I use your address to get my insurance license renewed I'll change it as soon as I get it."

7/31/18 – "Just so you know I'm back writing equine insurance.  I would really appreciate it if I could quote.  It's a brokerage that uses Great American.  I could use a start.  Let me know"

8/1/8 – "Got my insurance license back.  Back in business."  When asked "so are you going to be rich again?? Lol," Levesque responded, "Maybe."

Despite numerous claims made by Levesque such as those described above, Agent Petricig could find no record of a Florida insurance license for Levesque.  In an effort to reinvigorate his dissolved business, Levesque apparently made numerous false representations to former clients and contacts.  Levesque brazenly pursued a renewed insurance business without a license even after being made aware that the U.S. Secret Service and the Rhode Island State Police were investigating him.

II.   <u>Sentencing Recommendation</u>

A significant sentence is needed to reflect the seriousness of the offense and to provide just punishment.  There is no dispute that this was a very serious and long-lasting offense.  Over a period of 14 months, Levesque managed to steal more than $1,200,000 from insurance companies, financing companies, and credit card companies.[1] He did so deliberately and methodically, creating false documents, misusing identities, and devising fictitious insureds.  He abused the position of trust in which he was placed and misused his license.  This was a serious offense that deserves serious punishment even if Levesque does not yet appreciate the gravity of his misconduct.

Levesque has little criminal history.  It is for that reason that the Government is recommending a sentence at the low end of the Guideline range.  But the offense conduct cannot simply be discarded as some kind of aberrational behavior.  Levesque committed fraud on almost a daily basis for 14 months, and even after he was caught, his business dissolved, his license surrendered, and the criminal investigation begun, he once again attempted to sell insurance apparently without a license.

We as a society cannot accept a situation in which would-be fraudsters would happily accept a light punishment in exchange for the money they steal.  A light sentence in this case of little or no incarceration would send exactly the wrong message to potential criminals: that it may be worth a short stint in jail (or less) to obtain over a

---

[1] He also stole from insureds; however, it is believed that most insureds were made whole by the victim insurance companies.  To the extent the investigation revealed overbilling of credit cards it was de minimis amounts not readily ascertained.

million dollars.  This defendant needs to know that stealing that quantity of money will result in a lengthy prison sentence.  And perhaps more importantly, other like-minded individuals need to know that the cost of orchestrating a fraud scheme far outweighs its benefits.

Although Levesque had an extremely difficult childhood, which he was able to overcome, his life since has been one of success and good fortune.  Many defendants sentenced by Your Honor have not had anywhere near the advantages in life that this defendant has enjoyed for much of his life.  When Levesque committed this offense, he was gainfully self-employed, in a business he loved, with a substantial annual salary (estimated at $500,000).  He had a loving and supportive family, friends, and he lived in Middletown, RI, traveling to Florida frequently.  Unlike other defendants with lesser means, there is no excuse for Levesque's conduct.  There is just simple, unadulterated greed.

The sentence sought by the government is consistent with others imposed by this Court for similar offenses.  See, e.g., United States v. Michael Lynch, Cr. No. 18-09WES (low-end guideline sentence of 33 months for $1.7 million theft from employer, Dr. Pepper); Untied States v. Charles Denno, Cr. No. 17-08WES (33 month sentence for defendant who stole $630,000 from employer, a non-profit); United States v. Richard D'Antuono, Cr. No. 17-117WES (36 month sentence for defendant, a union official, who stole $320,000 from carpenters union); United States v. Gerald Kent, Cr. No. 17-121WES (48 month sentence for defendant who stole $3.6 million from vendor).

A sentence of 41 months of imprisonment is sufficient, but not greater than

necessary, to punish defendant for his conduct, to promote respect for the law and to provide adequate deterrence.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorney,

AARON WEISMAN
United States Attorney

/s/ Sandra R. Hebert
SANDRA R. HEBERT
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Email:  sandra.hebert@usdoj.gov

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 8th day of March 2019, I caused the within Sentencing Memorandum to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic Notification:

Jeffrey Pine

/s/ Sandra R. Hebert
SANDRA R. HEBERT
Assistant U.S. Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
Email:  sandra.hebert@usdoj.gov